UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

ANTONY AENEAS DANIELS,

                Plaintiff,　　　　　　　**MEMORANDUM & ORDER**
　　　　　　　　　　　　　　　　　19-CV-3110 (MKB)

      v.

AMERICAN AIRLINES INC.,

                Defendant.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Antony Aeneas Daniels commenced this action in the Supreme Court of the State of New York, County of Queens, on May 1, 2019, naming American Airlines and nine of its employees as defendants. (Compl. filed in State Ct. Action, annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.) On May 24, 2019, American Airlines Inc. removed the action to the United States District Court for the Eastern District of New York. (Notice of Removal, Docket Entry No. 1.) In December of 2019, American Airlines Inc. moved to dismiss the action for lack of jurisdiction and failure to state a claim. (Def.'s Mot. to Dismiss, Docket Entry No. 17.) The Court granted the motion to dismiss, but also granted Plaintiff leave to amend the Complaint. (Mem. and Order dated Sept. 4, 2020, Docket Entry No. 26.) Plaintiff filed an Amended Complaint on April 17, 2021, replacing all former defendants with Defendant American Airlines Inc. (Am. Compl. 1, Docket Entry No. 42.) On May 21, 2021, Plaintiff filed a second Amended Complaint. (Second Am. Compl. ("SAC"), Docket Entry No. 52.)

On July 30, 2021, Defendant moved to dismiss the SAC for failure to state a claim.[1]

(Def.'s Mot. to Dismiss for Failure to State a Claim ("Def.'s Mot."), Docket Entry No. 55; Def.'s

Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 55-3.)[2]  On October 11,

Plaintiff, who had initially moved for leave to amend the SAC on June 25, (Pl.'s Mot. for Leave

to File Doc., Docket Entry No. 54), submitted a proposed third Amended Complaint (Third Am.

Compl. ("TAC"), Docket Entry No. 59), and moved to remand the action back to the Supreme

Court of New York, Queens County (Pl.'s Mot. to Remand, Docket Entry No. 60).[3]

---

[1]  Plaintiff opposed the motion to dismiss, claiming that he had not received certain documents that he had requested from Defendant.  (Pl.'s Resp. to Mot., Docket Entry No. 61.) Because at the motion to dismiss stage all factual allegations in the Complaint are accepted as true, Plaintiff does not need to provide any evidence, including documents from Defendant, to oppose Defendant's motion.  *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106-07 (2d Cir. 2021).  The Court has reviewed Plaintiff's opposition, but because it is not responsive to the points raised in Defendant's motion to dismiss, it is not mentioned in the analysis below.

[2]  Defendant attaches multiple additional documents to its motion, but the Court declines to consider the additional information or to convert the motion to a summary judgment motion. (*See* Decl. of M. Moscicki, annexed to Def.'s Mot., Docket Entry No. 55-1; Exhibit A to Decl. of M. Moscicki, annexed to Def.'s Mot., Docket Entry No. 55-2; Appendix A to Def.'s Mem., annexed to Def.'s Mot., Docket Entry No. 55-4); *see also Steadfast Ins. Co. v. T.F. Nugent Inc.*, 513 F. Supp. 3d 419, 423 n.2 (S.D.N.Y. Jan. 15, 2021) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (alterations in original) (internal citation omitted) (quoting *Abbey v. 3F Therapeutics Inc.*, No. 06-CV-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009))); *Energizer, LLC v. MTA Trading, Inc.*, No. 20-CV-1583, 2021 WL 2453394, at *3 n.6 (E.D.N.Y. June 16, 2021) (same); *Regan v. Village of Pelham*, No. 19-CV-7987, 2021 WL 1063320, at *8 n.6 (S.D.N.Y. Mar. 19, 2021) (finding that "[the p]laintiff's reliance on [the defendant's policy], which appears nowhere in the [a]mended [c]omplaint and is only discussed in [the p]laintiff's affidavit, is improper because it is beyond the four corners of the complaint and cannot be considered in adjudication of a Rule 12(b)(6) motion to dismiss for failure to state a claim").

[3]  Plaintiff has since filed a second motion to remand, (Second Mot. to Remand, Docket Entry No. 63), an additional Amended Complaint, (Fourth Am. Compl., Docket Entry No. 64), and a letter requesting leave to submit a USB flash drive to the court.  (Letter dated Jan. 11, 2022, Docket Entry No. 65.)  Defendant has responded to these motions.  (Resp. in Opp'n,

For the reasons set forth below, the Court grants Defendant's motion to dismiss, denies

Plaintiff's motion to amend, and denies Plaintiff's motion to remand the case to state court.

## I. Background

The following facts are taken from the SAC[4] and are accepted as true for the purposes of

deciding the motion.[5]

Plaintiff is a former flight attendant for Defendant American Airlines Inc. (*See* SAC 1.)

While he was employed by Defendant,[6] Plaintiff was "singled out by" Charlene Howell, one of

---

Docket Entry No. 70.) Because the Court is denying Plaintiff's motion to amend and dismissing the Second Amended Complaint, it denies these subsequent filings as moot. *See Illiano v. Mineola Union Free School Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) ("'When a plaintiff amends its complaint while a motion to dismiss is pending' the court may 'den[y] the motion as moot.'" (alterations in original)). Defendant has also filed a motion for sanctions, which is currently pending. (Letter Mot. for Sanctions, Docket Entry No. 68.)

[4] Because the pages of the SAC are not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

[5] Plaintiff filed the SAC with copies of subpoena forms, (SAC 9–10, 12–24), and records of Plaintiff's pre-suit attempts to contact Defendant and representatives of the Association of Professional Flight Attendants ("APFA"), (SAC 10, 25–30). In addition to the factual allegations in the SAC, the Court also considers the factual allegations set forth in these documents. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (citations omitted)); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).

[6] In a supplement to the initial Complaint, Plaintiff stated that he was employed from September of 2014 to May 19, 2016. (Suppl. Compl. 4, Docket Entry No. 25.) (Because the pages of the Supplemental Complaint are not consecutively paginated, the Court refers to the page numbers assigned by the ECF system.) Plaintiff does not mention these dates in the SAC, instead emphasizing that discovery is necessary to determine the exact dates that events occurred. (SAC 7–10.) The Court therefore does not assume that Plaintiff was employed from September of 2014 to May 19, 2016, for purposes of evaluating Defendant's motion. Rather, it

Defendant's inflight managers.  (*Id.* at 5.)  Howell withheld "work-based duties" from Plaintiff and took "punitive action" against him in violation of "company procedures when it comes to placing an employee on 'withheld from service status.'"  (*Id.*)

As a result of his "onboard experience with workplace bullying," Plaintiff interacted with members of Defendant's management team.  (*Id.* at 6.)  Plaintiff was bullied by members of this management team, including Chet White, Vivian Rutigliano, and Felix Elias-Rivera.  (*Id.*)  Elias-Rivera's wife "was employed as a flight attendant at the time of the incident where [Plaintiff] was a victim of workplace bullying and workplace retaliation."  (*Id.* at 7.)

While Plaintiff was still employed by Defendant, in "[s]pring or [e]arly [s]ummer 2016," Defendant's then-New York Base Manager, Chet White, "submitted paperwork . . . to ban [Plaintiff] from flying on American Airlines."  (*Id.* at 1.)  White then placed Plaintiff on a direct flight from New York to Chicago.  (*Id.* at 1–2.)  Plaintiff remained employed by Defendant weeks after being banned from all American Airlines flights.  (*Id.*)  He was "not given an explanation regarding why he was being banned."  (*Id.* at 5.)  Plaintiff's access to the JetNet Employee Portal and company email accounts were also disabled before he was terminated from his employment with Defendant.  (*Id.* at 5, 14.)

When White sent Plaintiff on the flight from New York to Chicago, Plaintiff asked Ellen Eherts, an American Airline flight attendant who also acted on behalf of the Association of Professional Flight Attendants ("APFA") Union, to escort him to his gate.  (*Id.* at 6–7.)  Eherts refused to do so because she had an upcoming flight, even though Plaintiff was a dues-paying member of the APFA Union and Eherts was aware that Plaintiff "risked imminent termination."

---

accepts as true Plaintiff's assertion in the SAC that the relevant events occurred in "Spring or Early Summer 2016."  (SAC 2, 16, 23.)

(*Id.* at 6.) Eherts was a flight attendant who was "working in the same environment and the same professional role where she was interacting with the flight attendants who bullied [Plaintiff] onboard flight 45." (*Id.*)

Plaintiff was subsequently terminated from American Airlines in spring or early summer of 2016. (*See id.* at 2–3, 23.) Because Defendant reported to the New York Department of Labor (NYDOL) that Plaintiff was terminated due to job abandonment, Plaintiff was unable to receive unemployment insurance. (*Id.* at 2–4.) Defendant also "presented false documentation" to NYDOL and "falsif[ied] company documentation" in order to avoid the legal consequences of illegal termination and workplace retaliation. (*Id.* at 4.)

Plaintiff repeatedly contacted Defendant's CEO and informed him about Plaintiff's illegal termination, ban from American Airlines flights, and loss of access to his JetNet and company email accounts, but the CEO "did not make any steps to resolve [P]laintiff's issues or to make sure that [P]laintiff was able to return to work after being illegally terminated." (*Id.* at 4–5.)

While trying to get his job back, Plaintiff spoke on the phone with Defendant's representative Amber Sanders. (*Id.* at 2–3.) Plaintiff asked Sanders how he could have abandoned his job when he had been banned from American Airlines flights. (*Id.*) Sanders "was unable to answer this pressing question." (*Id.* at 3.) At the end of her conversation with Plaintiffs, Sanders recommended that Plaintiff "cease from contacting American Airlines Inc. in the future." (*Id.*)

Before filing suit, Plaintiff "tried to obtain a fair resolution for over two years by going directly through American Airlines Inc.," but was unable to do so. (*Id.* at 10.) Because Plaintiff

was terminated from his JetNet account, he was "unable to refer back to company resources for the purpose of saving and printing evidence supporting [his] claim." (*Id.* at 7.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b. Workplace bullying and hostile work environment claims

Plaintiff claims that Defendant "knowingly [took] part in . . . workplace bullying." (SAC 1.) He refers to being bullied "onboard flight 45" and claims that Chet White engaged in "workplace bullying" when he put Plaintiff on a flight from New York to Chicago. (*Id.* at 6.) He also alleges that Defendant "actively participat[ed] in . . . creating a hostile work

environment." (*Id.* at 1.) Unlike the original Complaint, the SAC does not allege that Defendant or its employees discriminated against Plaintiff due to his age or any other protected characteristic. (*See* Compl. 17.)

Defendant argues that to the extent Plaintiff's bullying claims sound in discrimination under New York State or City law, the claims fail because Plaintiff fails to plead any "discriminatory acts, omissions, or animus" by Defendant. (Def.'s Mem. 15, 18–19.)[7] Similarly, Defendant argues that Plaintiff fails to "plead any comments or acts," in particular any "discriminatory comments," that would show that he was subjected to a hostile work environment in violation of New York State or City law. (*Id.* at 16–19.)

Plaintiff does not cite any statutory authority for his workplace bullying and hostile work environment claims. Such claims are normally governed by the relevant federal, state, and local laws governing workplace discrimination and harassment: Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"); and the New York City Human Rights Law ("NYCHRL"). However, any claims Plaintiff seeks to assert under these statutes fail because Plaintiff has not alleged any facts to suggest that Defendant discriminated against him due to any characteristic protected under these statutes. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) (stating that Title VII prohibits employers from "tak[ing] adverse action against an employee because of that employee's 'race, color, religion, sex, or national origin'" (quoting 42 U.S.C. § 2000e-2(a))); *Rodriguez v. Metro*

---

[7] Defendant's memorandum addresses the proposed Amended Complaint Plaintiff filed with his April 24, 2021 motion to "resubmit [his] [A]mended [C]omplaint" in order to correct spelling and typographical errors. (Def.'s Mem. 3 n.2; Mot. to Amend/Correct/Supplement, Docket Entry No. 43.) The proposed Amended Complaint is substantively identical to the SAC. (*Compare* Corrected Am. Compl., annexed to Mot. to Amend/Correct/Supplement, Docket Entry No. 43-1, *with* SAC.)

*Elec. Contractors, Inc.*, No. 18-CV-5140, 2021 WL 848839, at *8 (E.D.N.Y. Mar. 5, 2021)

(noting that the NYSHRL "makes it unlawful for an employer to discriminate on the basis of an

'individual's age, race, creed, color, national origin, sexual orientation, gender identity or

expression, military status, sex, disability, predisposing genetic characteristics, familial status,

marital status, or status as a victim of domestic violence'" (quoting N.Y. Exec. Law §

296(1)(a))); *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2020 WL 3100256, at *6

(S.D.N.Y. June 11, 2020) (explaining that the NYCHRL "prohibits employers from

discriminating 'because of the actual or perceived age, race, creed, color, national origin, gender,

disability, marital status, partnership status, caregiver status, sexual and reproductive health

decisions, sexual orientation, uniformed service or alienage or citizenship status of any person'"

(quoting N.Y.C. Admin. Code § 8-107(1)(a))).  Because there are no generalized causes of action

prohibiting workplace bullying or creation of a hostile work environment where the plaintiff has

not identified that he is a member of a protected group, Plaintiff's workplace bullying and hostile

work environment claims fail.[8]  *See Johnson v. City Univ. of N.Y.*, 48 F. Supp. 3d 572, 574

(S.D.N.Y. 2014) ("Bullying and harassment have no place in the workplace, but unless they are

---

[8]  In the original Complaint, Plaintiff alleged that he was bullied, discriminated against, and subjected to a hostile work environment due to his age.  (Compl. 17).  Even assuming that Plaintiff is again alleging age-based discrimination, his claims fail for the reasons articulated in the Court's decision dismissing the original Complaint – for failure to state a claim for age discrimination or hostile work environment under the NYSHRL and NYCHRL, and failure to state a claim under the Age Discrimination in Employment Act because he was below the age of forty and had not alleged that he filed a timely charge with the Equal Employment Opportunity Commission.  (Mem. and Order dated Sept. 4, 2020 at 28–29, 34–35, 37, 41.)  In that decision, the Court found that Plaintiff did not make any "factual allegations to support his claim that older employees were treated better than younger employees because of their age," (*id.* at 34), did not "set forth any factual allegations to suggest that Plaintiff's colleagues' alleged bullying was motivated by discriminatory intent or because of Plaintiff's age or any other protected characteristic," (*id.* at 36), and did not "plausibly allege that [Plaintiff] was 'treated "less well" because of a discriminatory intent," (*id.* at 41–42).

motivated by the victim's membership in a protected class, they do not provide the basis for an action under Title VII"); *De La Cruz v. City of New York*, 783 F. Supp. 2d 622, 639 (S.D.N.Y. 2011) ("Mere 'workplace bullying,' . . . is not enough to give rise to an actionable hostile work environment claim. Rather, there must be a showing that the conduct occurred because of the employee's membership in a protected class."); *Vito v. Bausch & Lomb Inc.*, 403 F. App'x 593, 595 (2d Cir. 2010) ("[I]t is axiomatic that in order to establish a . . . hostile work environment . . . a plaintiff must demonstrate that the conduct occurred because of her [membership in a protected class]." (alterations in original) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's bullying and hostile work environment claims.

### c.  Retaliation claim

Plaintiff claims that Defendant engaged in workplace retaliation in violation of New York Labor Law ("NYLL") section 215. (SAC 1.) He alleges that Defendant's employee Charlene Howell retaliated against him when she withheld job duties from him without explaining why, and that Chet White put him on a flight from New York to Chicago "because of workplace retaliation and workplace bullying." (*Id.* at 5, 6.) Plaintiff claims that as a result of experiencing workplace bullying, he interacted with members of Defendant's management team, which "resulted in him becoming a victim of workplace retaliation and being illegally terminated from his position as a flight attendant." (*Id.* at 6.) He also claims that his access to JetNet was denied "due to [w]orkplace [r]etaliation." (*Id.* at 14.)

Defendant argues, first, that Plaintiff's claim under section 215 of the NYLL is barred by the two-year statute of limitations. (Def.'s Mem. 21.) Second, Defendant argues that Plaintiff fails to allege participation in a protected activity, as required under section 215. (*Id.*) In

addition, Defendant argues that to the extent that Plaintiff's claim is that Defendant retaliated against him *after* his employment had been terminated, Plaintiff "does not plead any facts showing his post-separation complaints . . . are linked to the separation itself." (*Id.* at 22.)

NYLL retaliation claims are analyzed in the same manner as Fair Labor Standards Act (FLSA) retaliation claims. *Fox v. Starbucks Corp.*, No. 19-CV-4650, 2021 WL 4155029, at *5 (S.D.N.Y. Sept. 13, 2021) ("For present purposes, the elements of FLSA and NYLL retaliation claims overlap in all material respects." (quoting *Cortese v. Skanska Koch, Inc.*, No. 19-CV-11189, 2021 WL 2472242, at *10 (S.D.N.Y. June 17, 2021))); *Salazar v. Browne Realty Assoc., L.L.C.*, 796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (explaining that the pleading requirements for a retaliation claim under the FLSA and the NYLL are the same); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020) (rejecting plaintiff's NYLL retaliation claim for failure to adequately plead causation); *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (describing the elements of a prima facie case of retaliation under the FLSA). "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53 (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)); *see also Kim v. Lee*, No. 21-CV-3552, 2021 WL 6052122, at *10 (S.D.N.Y. Dec. 20, 2021) (finding that a prima facie claim of retaliation is established by "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" (alteration in

original) (quoting *Mullins*, 626 F.3d at 53)); *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d. 489, 500 (S.D.N.Y. 2016) (same).

First, to the extent that Plaintiff's retaliation claims are based on conduct that occurred prior to May 1, 2017, as they appear to be, they are barred by the relevant two-year statute of limitations. *See* N.Y. Lab. Law § 215(2)(a); *Wang v. Palmisano*, 157 F. Supp. 3d 306, 319 (S.D.N.Y. 2015) (applying "New York's two-year limitations period to Plaintiff's retaliatory-discharge claim"); *Esmilla v. Cosmopolitan Club*, No. 09-CV-10169, 2011 WL 814007, at *3 (S.D.N.Y. Mar. 3, 2011) ("Claims under Section 215 [of the NYLL] must be asserted within two years of injury."); *McKenna ex rel U.S. v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 699 (S.D.N.Y. 2006) ("New York Labor Law § 215 . . . provides a two-year statute of limitations for retaliatory terminations arising out of employee complaints about employer violations of the state's labor laws.").[9]

Second, even assuming that Plaintiff's retaliation claim was timely, Plaintiff nevertheless fails to state a claim for retaliation under section 215 of the NYLL because Plaintiff does not allege that Defendant's adverse actions against him occurred after he participated in a protected activity.[10] "An employee engages in a protected activity when she complains of an employment

---

[9] Plaintiff repeatedly emphasizes that he does not know the exact dates that events occurred because he lacks access to company resources, including access to the online employee portal, and therefore seeks to subpoena Defendant for access to those resources. (SAC 7–10.) However, Plaintiff also claims that he was banned from American Airline flights in spring or early summer of 2016, (*id.* at 1–2, 16, 23), and was terminated from his employment with Defendant "weeks" later, (*id.* at 1–2, 23). These general time ranges are sufficient to establish that Defendant's alleged violation of NYLL § 215 occurred prior to May 1, 2017.

[10] Plaintiff's claim also fails if evaluated under the retaliation provisions of Title VII, the NYSHRL, or the NYCHRL. Under Title VII or the NYSHRL, for "a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against him, (2)

practice that she reasonably believes violates the law." *Guzman v. Crothall Healthcare Inc.*, No. 17-CV-4306, 2021 WL 5048993, at \*15 (E.D.N.Y. Sept. 29, 2021) (quoting *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011)).  Plaintiff does not allege that any of Defendant's actions — withholding Plaintiff's job duties, placing him on a flight to Chicago, terminating his employment, or removing his access to JetNet, (SAC 5–6, 14) — were taken because Plaintiff complained of what he believed to be an illegal employment practice.  Plaintiff seems to allege that he was terminated from his employment after he complained about workplace bullying to Defendant's management team, (*id.* at 6), but because he does not allege that he was bullied due to his membership in a protected group, the SAC fails to claim that Defendant took an adverse action against Plaintiff after Plaintiff complained that Defendant violated the NYLL.  *See Farmer v. Fzoad.com Enterprises Inc.*, No. 17-CV-9300, 2020 WL

---

because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018); *see also Holcomb v. State Univ. of N.Y. at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017) (explaining that claims under Title VII and the NYSHRL are evaluated the same way).  (In June of 2019, New York State Legislature amended the NYSHRL, "the effect of which is to render the standard for claims [brought under the NYSHRL] closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479, 2019 WL 4081898, at \*5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also* A8421/S6577 (as amended by S6594/A8424). Because the amendments apply to claims accruing after October 11, 2019, *see Wellner*, 2019 WL 4081898, at \*5 n.4; A8421/S6577 (as amended by S6594/A8424), the date that the amendments go into effect, they do not apply to Plaintiff's NYSHRL claims.)  Plaintiff alleges that he was fired after complaining about workplace bullying, but because he does not claim that he was bullied due to his membership in a protected group, he fails to allege that he was fired for opposing an unlawful employment practice under Title VII or the NYSHRL.

   Similarly, to prevail on a retaliation claim under the NYCHRL, "the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (first citing *Albunio v. City of New York*, 16 N.Y.3d 472, 479 (2011); and then citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (App. Div. 2009)).  Plaintiff alleges that he was fired after complaining about workplace bullying, but not that he was fired after complaining about discrimination that violated the NYCHRL.  He therefore fails to state a claim for retaliation under Title VII, the NYSHRL, or the NYCHRL.

6530787, at *5 (S.D.N.Y. Aug. 5, 2020) ("To establish a prima facie case [under NYLL § 215], 'the plaintiff must adequately plead that while employed by the defendant, she made a complaint about the employer's violation of the [NYLL].'" (alterations in original) (quoting *Higueros v. N.Y. State Catholic Health Plan, Inc.*, 630 F. Supp. 2d 265, 269 (E.D.N.Y. 2009))).[11]

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's retaliation claim.

### d. Breach of contract claim

Plaintiff alleges that several of Defendant's employees breached a contract and Defendant is therefore liable for these breaches. First, Plaintiff claims that Charlene Howell, the American Airlines employee he claimed wrongfully withheld his job duties, "is responsible for . . . breach of contract." (SAC 5.) Second, Plaintiff claims that Ellen Eherts "is responsible for breaching" Plaintiff's contract with Defendant "because though [Plaintiff] pays union dues on a monthly basis for the intervention of [an] APFA Union Representative, he was not represented, defended, and support[ed]" during a situation in which he "made it known to Ellen Eherts that he risked imminent termination." (*Id.* at 6.) Third, Plaintiff refers to Felix Elias-Rivera as

---

[11] In the original Complaint, Plaintiff alleged that he was bullied, discriminated against, and subjected to a hostile work environment due to his age, and unlawfully terminated after he complained about this discriminatory treatment. (Compl. 2, 17). Even assuming that Plaintiff is again alleging retaliation after complaining about age discrimination, his claims fail under the NYSHRL and NYCHRL for the reasons articulated in the Court's decision dismissing the original Complaint. (Mem. and Order dated Sept. 4, 2020.) Because the Court found that Plaintiff made "no allegations to suggest that he indicated in any way to his employer that he was being mistreated based on his age or any other protected characteristic," any NYLL retaliation claim premised on age discrimination also fails. (*Id.* at 42–43.)

"facilitating the breach in contract between" Plaintiff and Defendant.  (*Id.* at 7.)  Fourth, Plaintiff

claims that Chet White is guilty of breach of contract.  (*Id.* at 16.)

Defendant argues that Plaintiff's claims are preempted and that Plaintiff fails to allege the

elements of a breach of contract claim.  In support of its preemption argument, Defendant

contends that its "status as a passenger air carrier submits it within the ambit of the [Railway

Labor Act ("RLA")], which grievance and arbitration systems must be used exclusively for

resolving labor claims arising under the [collective bargaining agreement]."  (Def.'s Mem. 9–

10.)  Specifically, Defendant argues that the RLA requires air carriers to negotiate with

employees' collective bargaining representatives and "extinguishes Plaintiff's power to negotiate

his own relations with" Defendant, and as a result, Plaintiff's claims are subject to preemption

under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) "and should be

dismissed."  (*Id.* at 10.)  As to the elements of a contract claim, Defendant argues that Plaintiff

fails to plead the existence of an agreement, his adequate performance of the alleged contract,

Defendant's breach of that contract, and damages.  (*Id.* at 11.)

The Court declines to address Defendant's preemption argument because Plaintiff fails to

plead the elements of a breach of contract.

"The elements of a breach-of-contract-claim under New York law are '(1) the existence

of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract

by the defendant, and (4) damages.'"  *Frye v. Lagerstrom*, No. 20-CV-3134, 2021 WL 4022695,

at *4 (2d Cir. Sept. 3, 2021) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996));

*Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 F. App'x 37, 39 (2d Cir. 2014) (same).

### i.   Claims based on the conduct of Howell, Elias-Rivera, and White

The Court understands Plaintiff to be arguing that the actions of Howell, Elias-Rivera,

and White violated company regulations and therefore constituted a breach in Plaintiff's contract

with Defendant.  However, even if Plaintiff's breach of contract claim is not preempted by the

RLA — which the Court does not decide — Plaintiff's conclusory allegations that Defendant

violated company regulations by placing him on "withheld from service status," (SAC 5),

"retaliating against" him, (*id.* at 7), disabling his access to the employee portal, (*id.* at 14), and

banning him from American Airlines flights, (*id.* at 16), are insufficient to state a breach of

contract claim because Plaintiff fails to provide any information about the alleged contract. *See*

*Curry-Malcolm v. Rochester City Sch. Dist.*, 835 F. App'x 623, 626 (2d Cir. 2020) (affirming

dismissal of claim that plaintiff's termination amounted "to a breach of the collective bargaining

agreement or another unspecified contract" because "her complaint fail[ed] to specifically allege

which provision of which contract was violated"); *Cambridge Cap. LLC v. Ruby Has LLC*, --- F.

Supp. 3d ---, ---, 2021 WL 4481183, at *17 (S.D.N.Y. Sept. 30, 2021) ("[A] complaint fails to

sufficiently plead the existence of a contract if it does not provide factual allegations regarding,

inter alia, the formation of the contract, the date it took place, and the contract's major terms.

Conclusory allegations that a contract existed or that it was breached do not suffice." (quoting

*Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 347 (S.D.N.Y. 2020))); *Harbor Distrib.*

*Corp. v. GTE Operations Supp. Inc.*, 176 F. Supp. 3d 204, 215–16 (E.D.N.Y. 2016) (collecting

cases) (explaining that "[c]onclusory allegations that a defendant breached an agreement are

insufficient to support a breach of contract claim" (quoting *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956, 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014))).

### ii. Claims based on Eherts' conduct

The Court understands Plaintiff to be alleging that Eherts breached Plaintiff's contract with Defendant and with APFA when she failed to "represent[], defend[], and support" Plaintiff even though she "was act[ing] on behalf of the APFA Union." (SAC at 7.) Plaintiff therefore appears to be asserting claims not only against Defendant but also against APFA for breaching the duty of fair representation.

"The duty of fair representation is a 'statutory obligation' under the NLRA, requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Green v. Dep't of Ed.*, 16 F.4th 1070, 1075 (2d Cir. 2021); *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473–75 (2d Cir. 2016). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim. *Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372–73 (1990)).

Plaintiff's claims about Eherts' conduct are insufficient to state a claim that APFA breached its duty of fair representation or that Defendant breached its contract with Plaintiff. When White put Plaintiff on a flight from New York to Chicago, Eherts declined to escort

Plaintiff to his gate.  (SAC 6.)  Plaintiff claims that Eherts failed to "represent[], defend[], and support" him even though she knew he was facing "imminent termination," that she was "incapable and ineffective at helping" him, and that she had a "motive for not helping [Plaintiff]" because her job as a flight attendant involved "interacting with the flight attendants who bullied" Plaintiff.  (*Id.*)  None of these conclusory allegations state a claim under either breach of contract or breach of the duty of fair representation.  *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011) (holding duty of fair representation claim failed where plaintiff failed to allege that union's inaction was "so far outside a wide range of reasonableness as to be irrational" (quoting *Air Line Pilots Ass'n Int'l v. O'Neil*, 499 U.S. 65, 67 (1991))); *Williams v. Metro-North R.R.*, No. 17-CV-3092, 2020 WL 1489832, at *13 (S.D.N.Y. Mar. 27, 2020) (dismissing duty of fair representation claim where plaintiff's allegations either "lack[ed] factual content" or did "not suggest irrational or discriminatory conduct"); *Xie v. N.Y.C. Dep't of Ed.*, No. 19-CV-4097, 2020 WL 32462, at *5 (E.D.N.Y. Jan. 2, 2020) (dismissing duty of fair representation claim because plaintiff failed to allege that union's actions "were arbitrary, discriminatory, or in bad faith, or allege facts from which this Court could infer such conduct").

Accordingly, the Court dismisses Plaintiff's breach of contract and any duty of fair representation claims.

### e.  Tort claims

Defendant argues that Plaintiff's tort claims sounding in defamation and negligence, (SAC 1, 2–3, 4–5, 21), must be dismissed for failure to state a claim, (Def.'s Mem. 11–12).

### i.  Defamation

Plaintiff claims that Defendant committed "libel and slander."  (SAC 1, 21.)  This claim appears to be grounded in Plaintiff's allegation that Defendant "falsif[ied] company

documentation" to avoid being held accountable for workplace retaliation and illegal termination, resulting in Plaintiff being "unable to obtain unemployment benefits which he should have qualified for."[12]  (*Id.* at 4.)  Plaintiff also claims that Chet White falsified documentation in banning Plaintiff from American Airline flights, (*id.* at 16, 23), and "provid[ed] a false report to a police officer in order to take part in workplace retaliation against" Plaintiff.  (*Id.* at 16.)

Defendant argues that (1) "Plaintiff's purported defamation claims are barred by the one-year statute of limitations applicable to such claims," and (2) Plaintiff "fails to identify a single false statement spoken or written by any American [Airlines] employee or representative in support of his defamation claim under New York law."  (Def.'s Mem. 11.)

"Defamation . . . is the invasion of the interest in a reputation and good name" and "consist[s] of the twin torts of libel and slander."  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citations omitted); *Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019) (same).  "Generally, spoken defamatory words are slander; written defamatory words are libel." *Albert*, 239 F.3d at 265 (citations omitted); *see also Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 289 (S.D.N.Y. 2013) (same); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) ("Defamation is the injury to one's reputation either by

---

[12]  To the extent that Plaintiff seeks to appeal his denial of unemployment benefits, this Court is not the proper forum for such claims.  "The handling of unemployment insurance benefits claims was committed to the administrative process by the New York Legislature." *Walker v. Comm'r of the NYS Dep't of Labor & Unemployment*, No. 14-CV-6976, 2015 WL 128028, at *6 (E.D.N.Y. Jan. 8, 2015) (citing to N.Y. Labor Law §§ 620–26).  Only after a decision by the administrative agency may "an adverse decision . . . be appealed to the courts of the state."  *Id.*; *see also Moore v. Ross*, 687 F.2d 604, 606 n.1, 2, 3 (2d Cir. 1982) (describing the process by which a claimant dissatisfied with the determination of his unemployment claim may request an administrative hearing, appeal to the appeal board, and only then appeal to New York state court).

written expression, which is libel, or by oral expression, which is slander." (citation omitted)).

"Under New York law a defamation plaintiff must establish five elements: (1) a . . . defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000); *Tannerite Sports LLC v. NBC Universal Media LLC*, 135 F. Supp. 3d 219, 232 (S.D.N.Y. 2015); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) ("The elements of a cause of action to recover damages for defamation are a false statement, published without privilege or authorization to a third party, fault and either causing special harm or constituting defamation per se." (alterations and citations omitted)); *Thompson v. Bosswick*, 855 F. Supp. 67, 76 (S.D.N.Y. 2012) ("New York law allows a plaintiff to recover for defamation by proving that the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory per se or caused the plaintiff special harm." (citing *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011))). A defamatory statement is one that exposes the plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society." *Biro*, 883 F. Supp. 2d at 456 (alterations in original) (quoting *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). "A statement that tends to injure another in his or her trade, business or profession is defamatory per se." *Id.* (citation omitted). "Ordinarily, opinion statements have absolute protection, and are non-actionable since they are 'not capable of being objectively characterized as true or false.'"

*Mestecky v. N.Y.C. Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (quoting *Celle*, 209 F.3d at 178).

"[C]ommunications with the DOL are subject to an absolute privilege under New York law." *Blige v. City Univ. of New York*, 15-CV-8873, 2017 WL 498580, at *11 (S.D.N.Y. Jan. 19, 2017) (citing *Allen v. St. Cabrini Nursing Home, Inc.*, No. 00-CV-8558, 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001)); *see also Jean-Joseph v. Walgreens, Inc.*, No. 10-CV-4635, 2011 WL 5025266, at *3 (E.D.N.Y. Oct. 21, 2011) ("The plaintiff concedes that the statements that are alleged to have been made to the unemployment insurance board enjoy absolute immunity."); *Pappas v. Air France*, 652 F. Supp. 198, 202 (E.D.N.Y. 1986) ("New York law 'is clear that when a defendant-employer writes to the Department of Labor concerning a former employee's right to unemployment benefits, that writing is privileged and cannot be the basis for a libel action by the claimant-employee.'" (quoting *Clegg v. Bon Temps, Ltd.*, 452 N.Y.S.2d 825, 828 (Civ. Ct. N.Y. County 1982))).

First, to the extent that Plaintiff's defamation claims are based on conduct that occurred prior to May 1, 2018, as they appear to be, they are barred by the one-year statute of limitations governing defamation claims under New York law. *See* N.Y. C.P.L.R. § 215(3); *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394, 412 (S.D.N.Y. 2019) (finding defamation claim "time-barred under New York's one-year statute of limitations").

Second, with regard to Plaintiff's claim that Defendant defamed him when it reported to NYDOL that Plaintiff had been terminated due to job abandonment, any representations made by Defendant to the New York Department of Labor cannot be the basis of a defamation claim by Plaintiff. *See Allen*, 2001 WL 286788, at *6 (dismissing the plaintiff's defamation claim because "[w]hen an employer writes to the Department of Labor concerning a former employee's right to

unemployment benefits, that writing is subject to an absolute privilege and cannot serve as the basis for a libel action brought by the claimant employee").

In addition, Plaintiff's claim that Defendant defamed him when Chet White banned Plaintiff from American Airlines flights, a process that Plaintiff claims involved falsifying documentation and making a false report to a police officer, (SAC 16, 23), fails to state a claim for defamation because Plaintiff does not identify the alleged false statements at issue, either to the police officer or in the allegedly falsified documents. *See Parrino v. SunGard Availability Servs. LP*, No. 11-CV-3315, 2013 WL 1120825, at *3 (E.D.N.Y. Feb. 27, 2013) ("The Second Circuit has found a claim for defamation that 'fail[ed] to plead adequately the actual words spoken' failed as a matter of law." (alteration in original) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990))), *report and recommendation adopted*, No. 11-CV-3315, 2013 WL 1104784 (E.D.N.Y. Mar. 18, 2013); *id.* ("[I]n libel and slander cases the particular words complained of shall be set forth in the complaint." (quoting *Goldberg v. Sitomer, Sitomer & Porges*, 469 N.Y.S.2d 81, 83 (App. Div. 1983))).

Further, to the extent the alleged defamatory statements are evaluations of Plaintiff's performance, such statements are likely statements of opinion and thus non-actionable. *See Mestecky*, 791 F. App'x at 239 ("Statements . . . that a co-employee's work is dangerous and his employment should therefore be terminated, if articulated as an evaluation of his performance, would likely be protected as a statement of opinion." (alteration in original) (quoting *Albert*, 239 F.3d at 256)).

### ii.   Negligence

Plaintiff asserts that Defendant committed "negligence (malfeasance and nonfeasance)" and "gross negligence."  (SAC 1.)  In support, Plaintiff claims that Defendant's representative

Amber Sanders was negligent because when she "was confronted with the fact that an employee cannot be guilty of [job abandonment] when the employee is banned from the workplace, she should have done more research in order to provide a qualitative explanation for why there was contradictory data in [Plaintiff's] employee file." (*Id.* at 2–3.) Plaintiff also claims that Defendant's CEO Douglas Parker is "guilty of malfeasance [and] nonfeasance" because although Plaintiff made Parker "aware of [P]laintiff's situation," Parker "did not make any steps to resolve [P]laintiff's issues or to make sure that [P]laintiff was able to return to work after being illegally terminated." (*Id.* at 4–5.)

Defendant argues that Plaintiff's negligence claim is barred by the exclusive remedy provisions of the New York Workers' Compensation law.[13] (Def.'s Mem. 12–13.)

The Court agrees with Defendant that Plaintiff's negligence claims are barred by the exclusive remedy provisions of the New York Workers' Compensation Law, N.Y. Workers' Comp. Law § 29(6), and dismisses these claims. *See Brown v. Montefiore Med. Ctr.*, No. 18-CV-3861, 2019 WL 4454230, at *12 (S.D.N.Y. May 8, 2019) ("[T]he New York Workers' Compensation Law provides the exclusive remedy against an employer for an injury caused by the negligence or wrong of another employee . . . [and] negligence claims are routinely dismissed on this basis."), *report and recommendation adopted*, No. 18-CV-3861, 2019 WL 3282927 (S.D.N.Y. July 22, 2019); *Ingram v. Nassau Health Care Corp.*, No. 17-CV-5556, 2019 WL 1332857, at *9 (E.D.N.Y. Mar. 25, 2019) ("It is well settled within the Second Circuit that

---

[13] Defendant also argues that Plaintiff's negligence claim is subject to a three-year statute of limitations and therefore time-barred to the extent that it is based on allegations that accrued prior to May 1, 2016. (Def.'s Mem. 12.) It is unclear from the SAC whether the allegedly negligent acts occurred before or after May 1, 2016. Plaintiff claims that he was banned from American Airlines flights in spring or early summer of 2016, (SAC 1–2, 16, 23), and seems to have communicated with Sanders and Parker sometime after that. Because Plaintiff's claim fails regardless, the Court does not decide whether it is also barred by the statute of limitations.

common law negligence claims are barred by the New York[ ] Workers' Compensation Law."

(alteration in original) (internal quotation marks omitted) (*quoting Corrado v. N.Y. Unified Ct.*

*Sys.*, 163 F. Supp. 3d 1, 26 (E.D.N.Y. 2016))).[14]

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's tort claims.

### f. Criminal law claims

Plaintiff claims that Defendant's CEO Douglas Parker is "guilty of . . . aid[ing] and

abetting" because he failed to take action to resolve Plaintiff's situation and that Charlene

Howell "is responsible for aid[ing] and abetting" for placing him on "withheld from service

status" in violation of company policy.  (SAC 4–5.)  He also accuses Defendant of "acting in

concert" in violation of section 20.00 of the New York State Penal Law ("NYSPL") and of

---

[14]  Even if Plaintiff was no longer employed at the time of his interactions with Sanders and Parker, and therefore the New York Workers' Compensation Law does not bar this claim, Plaintiff nevertheless fails to state a negligence claim because he fails to allege that either Sanders or Parker owed him a duty of care.  To establish a prima facie case of negligence under New York law, "a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach."  *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (2016)).  Plaintiff does not allege facts giving rise to a duty or explain why Defendant's representative would have a duty to "[do] more research in order to provide a qualitative explanation for why there was contradictory data in [a former employee's] file," (SAC 3), or why Defendant's CEO would have a duty to "resolve [a former employee's] issues or to make sure that [he] was able to return to work after being illegally terminated," (*id.* at 5).  Because there is no duty, Plaintiff fails to state a claim regardless of whether the claim is barred by the New York Workers' Compensation Law.  *See Chacko v. Costco Wholesale Corp.*, --- F. Supp. 3d ---, ---, 2021 WL 4927733, at *7 (S.D.N.Y. Oct. 22, 2021) ("[U]nder New York law, 'a finding of negligence must be based on the breach of a duty,' and thus a 'threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party.'" (quoting *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002))); *Woo Hee Cho v. Oquendo*, No. 16-CV-4811, 2018 WL 9945701, at *11 (E.D.N.Y. Aug. 25, 2018) (dismissing claim where "New York common law does not give rise to a duty"); *Pulka v. Edelman*, 40 N.Y.2d 781, 782–86 (1976) ("It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff.  In the absence of duty, there is no breach and without a breach there is no liability." (citations omitted)).

acting as an "accessory after the fact." (*Id.* at 1.)  Finally, he claims that Chet White violated section 210.45 of the NYSPL by making a false report to a police officer. (*Id.* at 16.)

Defendant argues that Plaintiff's claims that are "based on theories of criminal law[]" must . . . be dismissed." (Def.'s Mem. 13.)  They cite to the Court's decision dismissing Plaintiff's original Complaint, which held that there was no private cause of action for Plaintiff's claims based in criminal law.  (Mem. and Order dated Sept. 4, 2020.)

There is no private cause of action for aiding and abetting, acting in concert, accessory after the fact, or false report. *See Hilow v. Rome City Sch. Dist.*, No. 14-CV-288, 2015 WL 893050, at *8 (N.D.N.Y. Mar. 2, 2015) (no private cause of action for accessory after the fact or aiding and abetting); *Ong v. Park Manor (Middletown Park) Rehab. and Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (stating that section 210.45 of the NYSPL "cannot form the basis of a civil claim"); *Peterec v. Hilliard*, No. 12-CV-3944, 2013 WL 5178328, at *8 (S.D.N.Y. Sept. 16, 2013) (dismissing a false report claim because "private citizens do not have a private cause of action for criminal violations" (quoting *Alexander v. Tyson*, No. 11-CV-710, 2013 WL 1798896, at *2 n.2 (D. Conn. Apr. 29, 2013))); *see also Hilow*, 2015 WL 893050, at *8 ("Courts are clear that 'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action.' . . . The statutes here are simple criminal statutes; they do not expressly or by implication deputize anyone to enforce those statutes." (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, (1979))); *Smith v. N.Y.C. Police Dep't*, No. 06-CV-15436, 2010 WL 423039, at *5 (S.D.N.Y. Feb. 4, 2010) ("[A]n individual cannot bring a private cause of action for alleged criminal violations.").

Accordingly, the Court grants Defendant's motion and dismisses Plaintiff's criminal law claims.

### g.   Leave to amend

Plaintiff seeks leave to amend the SAC, claiming that "[t]here have been new developments."  (Pl.'s Mot. for Leave to File Doc.)  He has filed a proposed third Amended Complaint for the Court's consideration.  (*See* TAC.)

Defendant argues that the Court should deny Plaintiff's motion to amend because the proposed TAC is "virtually identical" to the SAC.  (Resp. in Opp'n re Mot. to Remand, Docket Entry No. 62.)

While "[a] *pro se* complaint should not be dismissed without [a court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (alterations omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)), "[l]eave to amend may properly be denied if the amendment would be futil[e]," *id.* at 140 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (quoting *Panther Partners Inc.*, 681 F.3d at 119)).  "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 386 (2d. Cir. 2015).  "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"  *Jordan v. Chase Manhattan*

*Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Plaintiff's proposed TAC is essentially identical to the SAC except that Plaintiff has altered the damages that he seeks. (*Compare* TAC *with* SAC.) The Court has twice granted Plaintiff leave to amend his Complaint. (*See* Order dated Mar. 18, 2021, Docket Entry. No 37; Order dated May 21, 2021, Docket Entry No. 50.) Having reviewed the proposed TAC, the Court determines that amendment would be futile because the proposed TAC suffers from the same deficiencies as the SAC. It therefore denies Plaintiff's motion to amend.

### h.   Motion to remand

Plaintiff seeks to remand this action to the Supreme Court of New York, Queens County, where it was originally filed. (Pl.'s Mot. to Remand.) In May of 2019, Defendant removed the action to the Eastern District of New York on the basis of diversity jurisdiction. (Notice of Removal.) Plaintiff argues that remand is now proper because the TAC seeks less than $75,000 in damages, which is below the amount in controversy threshold for diversity jurisdiction. (Pl.'s Mot. to Remand.)

Defendant argues, first, that the proposed TAC seeks more than $75,000 in damages. (Resp. in Opp'n re Mot. to Remand.) Second, even if Plaintiff properly reduced the amount in controversy below $75,000, federal jurisdiction is not affected by a reduction in the amount in controversy after the case has been removed. (*Id.* at 1–2.)

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). "In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law,

§ 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration in original). Under the diversity jurisdiction statute, all plaintiffs and all defendants must be of diverse citizenship. 28 U.S.C. § 1332(a); *see also Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties. . . ." (quoting 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants." (footnote omitted)). In addition, "[f]ederal diversity jurisdiction requires an amount in controversy of at least $75,000 . . . [and] this amount is measured as of the time that a complaint is filed," *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154–55 (D. Conn. 2016) (first citing 28 U.S.C. § 1332(a); and then citing *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005)), "and it is established by the face of the complaint and the dollar amount actually claimed," *id.* at 155 (first citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, (1961); and then citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)); *see also Hall*, 396 F.3d at 506 (noting that "[g]enerally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events").

Even if the Court were to accept the proposed TAC as the operative Complaint, and even assuming that the proposed TAC seeks less than $75,000 in damages, remand would not be proper. "[T]he presence of diversity jurisdiction — including the amount in controversy requirement — is measured at the time a complaint is filed." *Washington Nat'l Ins. Co. v. OBEX*

*Grp. LLC.*, 958 F.3d 126, 135 n.4 (2d Cir. 2020); *see also Pensionversicherungsanstalt v. Greenblatt*, 556 F. App'x 23, 26 (2d Cir. 2014) ("To determine whether the amount in controversy requirement is met, 'we measure the amount in controversy as of the date of the complaint.'" (quoting *Scherer*, 347 F.3d at 397)); *Hall*, 396 F.3d at 506 ("Generally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events."); *EMA Fin., LLC v. 5Barz Int'l, Inc.*, No. 18-CV-4995, 2019 WL 8503357, at *1 (E.D.N.Y. Sept. 18, 2019) (declining to reevaluate subject matter jurisdiction where the defendants claimed that discovery showed the amount in controversy was less than $75,000). Plaintiff has not alleged that the amount in controversy in the SAC reflected a mistake or was pled in bad faith. *See Hall*, 396 F.3d at 507 (explaining that the court "will look to post-filing events in evaluating the amount in controversy for jurisdictional purposes" where the complaint contained a mistake or was made in bad faith). The Court therefore denies Plaintiff's motion to remand.

III. **Conclusion**

For the foregoing reasons, the Court grants Defendant's motion to dismiss, denies

Plaintiff's motion to amend, and denies Plaintiff's motion to remand.  Plaintiff's January 2022

motion to remand, his amended complaint, and request for leave to submit a USB drive are

denied as moot.

Dated: February 17, 2022
   Brooklyn, New York

        SO ORDERED:


           s/ MKB    
        MARGO K. BRODIE
        United States District Judge